IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MARLON DONYELL LITTLE**                                                 **PETITIONER**

**v.**                                               **CIVIL ACTION NO. 5:23-cv-89-DCB-MTP**

**BURL CAIN**                                                **RESPONDENT**

### REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2254 filed by Petitioner Marlon Donyell Little and Respondent's Motion to Dismiss [9] pursuant to 28 U.S.C. § 2244(d). Having considered the parties' submissions and the applicable law, the undersigned recommends that Respondent's Motion to Dismiss [9] be granted and the Petition [1] be dismissed with prejudice as untimely.

### PROCEDURAL HISTORY

On May 13, 2014, in the Circuit Court of Claiborne County, Mississippi, Petitioner was convicted of armed robbery and possession of a weapon by a convicted felon. ([10-1] at 30). On September 2, 2014, the trial court sentenced Petitioner to serve thirty years in the custody of the Mississippi Department of Corrections for armed robbery and ten years in custody for possessing a weapon, with the sentences to be served concurrently. ([10-1] at 37).

Petitioner appealed his conviction to the Mississippi Supreme Court, which assigned the case to the Mississippi Court of Appeals. On November 22, 2016, the court of appeals reversed Petitioner's conviction and remanded the action for a new trial. *See Little v. State*, 233 So. 3d 311 (Miss. App. 2016). The court of appeals held that "the weight of the evidence preponderates heavily against the verdict where the sole substantive proof presented at trial was the testimony

of the victim identifying the defendant, and the victim's initial description of the attacker to the police was inconsistent with that identification." *Id*. at 314.

The Mississippi Supreme Court, however, granted the State's petition for writ of certiorari and on October 12, 2017, reversed the court of appeals' decision and affirmed Petitioner's conviction. *See Little v. State*, 233 So. 3d 288 (Miss. 2017), *reh'g denied*, Jan. 25, 2018. The supreme court stated:

> Sitting as "thirteenth juror," Court of Appeals reversed Marlon Little's convictions and remanded for a new trial, finding the weight of the evidence preponderated heavily against the verdict. We granted certiorari to clarify the appellate court's role when reviewing a motion for new trial. Despite this Court's prior language suggesting otherwise, neither this Court nor the Court of Appeals assumes the role of juror on appeal. We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
>
> Applying this standard, we find no reason to disturb Little's guilty verdict.

*Id*. at 289.

Based on a review of the record and a review of the United States Supreme Court's automated docket system,[1] Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

On April 25, 2018, Petitioner filed in the Mississippi Supreme Court an Application for Leave to Proceed in the Trial Court, along with his Motion for Post-Conviction Collateral Relief ("PCR motion"). ([10-10] at 50-67).[2] On January 11, 2019, the supreme court denied the PCR

---

[1] *See* https://www.supremecourt.gov/docket/docket.aspx (last visited May 20, 2024).

[2] The PCR motion was stamped filed on May 1, 2018, but was signed by Petitioner on April 25, 2018. Mississippi follows the "mailbox rule" with respect to PCR motions filed by *pro se* prisoners. *See Sykes v. State*, 757 So. 2d 997, 1000-01 (Miss. 2000); *see also Causey v. Cain*, 450

motion. ([9-5]). On May 1, 2019, Petitioner filed a Motion for Rehearing, which the Mississippi Supreme Court considered as a motion for reconsideration and denied on May 15, 2019. ([10-10] at 4-40).

On October 4, 2023, Petitioner submitted his federal Petition for Writ of Habeas Corpus [1].[3] On March 13, 2024, Respondent filed a Motion to Dismiss [9] arguing that the Petition is untimely and should be dismissed pursuant to 28 U.S.C. § 2244(d). Petitioner did not file a response.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") specifies that a petitioner seeking federal habeas relief must file a federal petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Egerton v. Cockrell*, 334 F.3d 433, 435 (5th Cir. 2003). The Fifth Circuit clarified the law for purposes of determining when a state conviction becomes final pursuant to Section 2244(d)(1)(A) by holding that:

> The language of § 2244(d)(1)(A) provides that a decision becomes final by the conclusion of direct review or the expiration of the time for seeking such review. We previously held that direct review includes a petition for writ of certiorari to the Supreme Court. Therefore, the conclusion of direct review is when the Supreme Court either rejects the petition for certiorari or rules on its merits. If the conviction does not become final by the conclusion of direct review, it becomes final by the expiration of the time for seeking such review. We previously held that this includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort. If the defendant

---

F.3d 601, 606-07 (5th Cir. 2006) (holding that the application of the "mailbox rule" to state court filings is a matter of state law to be respected by the federal courts). Under the "mailbox rule" a prisoner's pleading is deemed filed when he delivers it to prison officials for mailing. Giving Petitioner the benefit of the doubt, the undersigned will assume that his PCR motion was delivered to prison officials on April 25, 2018.

[3] The Petition [1] was stamped filed in this Court on October 5, 2023. Petitioner did not sign or date his initial Petition, but the envelope which held the Petition indicates that it was mailed on October 4, 2023. Petitioner submitted a signed Petition [5] on January 22, 2024.

3

stops the appeal process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires.

*Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

The Mississippi Supreme Court affirmed Petitioner's conviction on October 12, 2017, and denied his Motion for Rehearing on January 25, 2018. ([10-9] at 2). Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Accordingly, Petitioner's judgment became final—and the statute of limitations for federal habeas relief began to run—on April 25, 2018 (January 25, 2018 plus 90 days).[4] Petitioner was required to file his federal habeas petition by April 25, 2019, unless he is entitled to statutory and/or equitable tolling. *See* 28 U.S.C. § 2244(d)(1)(A). Petitioner filed his Petition on October 4, 2023, more than five years after the judgment became final.

***Statutory Tolling***

Whether statutory tolling occurred during the period between the judgment becoming final on April 25, 2018, and Petitioner filing his federal habeas Petition on October 4, 2023, is determined by reference to 28 U.S.C. § 2244(d)(2), which provides for tolling of the one-year limitations period during the time in "which a properly filed application for State post-conviction or collateral review" remains pending. As previously stated, Petitioner filed his PCR motion on April 25, 2018. ([10-10] at 50-67). The Mississippi Supreme Court denied the PCR motion on

---

[4] United States Supreme Court Rule 13.3 provides as follows:

> The time to file a petition for writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . . But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

4

January 11, 2019, and denied the Motion for Rehearing on May 15, 2019. ([10-10] at 4-40). As a result, the limitations period was tolled for 385 days (April 25, 2018, to May 15, 2019). Petitioner was required to file his federal habeas petition by May 14, 2020, absent equitable tolling.

### *Equitable Tolling*

The decision to apply the equitable tolling doctrine to the one-year limitations period set forth in § 2244(d) rests within the sound discretion of the district court. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). Generally, equitable tolling is appropriate only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Ott v. Johnson*, 184 F.3d 510, 513 (5th Cir. 1999). Additionally, in order to establish that he is entitled to equitable tolling, Petitioner must demonstrate "that he has been pursuing his rights diligently . . . ." *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). Courts should "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling." *Fisher*, 174 F.3d at 713 (quoting *Davis*, 158 F.3d at 811). Petitioner, however, bears the burden of proving the existence of rare and exceptional circumstances which warrant equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Although Petitioner did not file a response to the Motion to Dismiss [9], he argues in his Petition [1] that § 2244(d)'s statute of limitations should not bar his habeas claims because he is not an attorney or knowledgeable about law or procedure. ([1] at 14). However, neither a petitioner's "unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.

1999); *see also Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) (noting that a petitioner's pro se status, lack of legal training, and ignorance of the law and filing deadlines do not support equitable tolling); *Fisher*, 174 F.3d at 713 (holding that "ignorance of the law" and "limited access to outside information" do not support equitable tolling). Petitioner has failed to show that rare and exceptional circumstances prevented him from timely seeking federal habeas relief.

Moreover, the record demonstrates that Petitioner has not pursued his rights diligently. "[E]quity is not intended for those who sleep on their rights." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010). "The diligence required for equitable tolling purposes is reasonable diligence, . . . not maximum diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotations and citations omitted). The Mississippi Supreme Court denied Petitioner post-conviction relief on May 15, 2019, but Petitioner waited more than four years to file his habeas petition. Petitioner has failed to demonstrate that he made any effort to pursue his rights until years after the limitations period had expired. Petitioner has not shown a diligent pursuit of his rights, and thus, equitable tolling is not warranted.

***Actual Innocence***

Petitioner also argues in his Petition that he is actually innocent and, thus, § 2244(d)'s statute of limitations should not bar his habeas claims. The Supreme Court has explained that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare . . . ." *Id*. In order for a petitioner to meet the threshold requirement, he must persuade "the district court that, in light of the new evidence, no juror, acting reasonably, would

6

have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324.

A habeas action is not a retrial, and Petitioner enjoys no presumption of innocence. In fact, actual innocence claims "'come . . . before the habeas court with a strong—and in the vast majority of cases conclusive—presumption of guilt.'" *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005) (quoting *Schlup*, 513 U.S. at 326). The issue for this Court is not whether reasonable doubt may have existed if new information were presented to the jury, but rather that no reasonable juror would have found the defendant guilty. *Schlup*, 513 U.S. at 329.

In support of his actual innocence claim, Petitioner presents affidavits from his uncle (Darnell McCully), his girlfriend (Shawntraius Patterson), his housemate (Tamicia Irvin), and an acquaintance (Sherika Patton). These affidavits discuss the whereabouts of Petitioner on October 31, 2013, the date of the robbery.

> I, Darnell McCully, . . . hereby certify that on October 31, 2013, I visited with my nephew, Marlon Little, on Flower Street in Port Gibson, Mississippi. I am not sure of the time of my arrival however, it was a couple of hours before dark. When I got there we set around the house for about 30 minutes and then we left and went to the store. We went to Value Mart first and then to the Tobacco Store and M&M grocery store. I purchased food to bar-b-q back at the house. I'm not sure whether Marlon had any money on him, but he did ask me for $10, which I gave to him. We went back to the house and started to bar-b-q. At this time it was still daylight, getting close to getting dark. Marlon and I set the grill up that I had bought and I put the charcoal on and did started the bar-b-q. There were a group of people at the house, but I don't know them. We stayed outside for a while, it was late at the time we left.

([1-1] at 9).

> I, Tamicia Irvin, . . . hereby certify that on October 31, 2013, Marlon Little was living at my home as well as his girlfriend, Shawntraius Patterson (Tory). It was raining mostly all day and Marlon was at home the whole day up until about 5:00

> when I asked him to go to the Value Mart to get some tissue, chips and candy. He was about to walk but as he was walking out, his uncle, Darnell, pulled up and they talked for a few minutes before Marlon got into the car with Darnell and headed to the store. They were gone for about 45 minutes and got back around sunset. They came into the house with my bags, as well as bags from M&M and Family Dollar store. I then told them they could bar-b-que at my house. Tory was in the kitchen seasoning the meat. Sherika Patton came by and dropped off her two kids and two other children. Then Marlon took those kids and my three kids trick or treating to a few houses close to my house. He was gone about 15 minutes then came back. Brittany Bryant came by and she, Marlon and Darnell were outside bar-b-queing. Then Brittany and I took the kids to finish trick or treating and I left everyone else at my house. We were gone for about an hour and a half. And when I came back they were still at the house. T'monete King came by after we got back.

([1-1] at 12).

> I, Shawntraius Patterson, . . . hereby certify that on October 31, 2013, that Marlon Little was at the home of Tamicia Irvin at 06 Lower Street, Port Gibson, Mississippi, 39150 until about 5:00 p.m. Marlon and I were living at Tamicia's home, at that time, along with Valinto Collins along with Tamicia and Valinto's three children. It was raining mostly all day and Marlon was at home the whole day up until about 5:00 because Tamicia asked him to go to the dollar store. His uncle Darnell came by and they talked for about 10 to 15 minutes before Marlon got into the car with Darnell and headed to the store. I'm not sure exactly how long they were gone but they got back before 6:00 p.m. Sherika Patterson came by around 4:00 p.m. and asked me if I would take her kids trick or treating. She came back around 6:00 p.m. and dropped her kids off and two other children who appeared to the teenagers. Marlon took the kids trick or treating around the neighborhood and then came back. From there he and his uncle, Darnell started to bar-b-q and we were outside until late that night.

([1-1] at 11).

> I, Sherika Patton, . . . hereby certify that on October 31, 2013, I saw Marlon Little at the home of Tamicia Irvin on the street behind the Claiborne County jail. The first time I saw him that day was about 4:00 p.m. when I drove by Tamicia's house. I stopped and talked to him and Shawntraius Patterson (Tory) who told me that she and Marlon were going to take the kids trick or treating. I asked if they would take my kids and they said yes. I was there for just a few minutes and I left. Then I came back around 6:00 and dropped the kids off with Marlon and Tory. They had my two kids, Tamicia's three kids and the two other children I had with me. Tyshondra Johnson is 12 or 13 and she is my cousin. Jamicia is 12 or 13 and she is my friend's daughter. I dropped all four kids off and stayed there a few minutes and then I left. I came back about 8:00 and picked the children up. I was there just a few minutes and I left. Each time I came to the house Marlon was there.

8

([1-1] at 10).

As previously explained, a credible claim of actual innocence requires Petitioner to produce "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added).  "The Supreme Court has not explicitly defined what constitutes 'new reliable evidence' under the *Schlup* actual-innocence standard," but the Fifth Circuit has explained that "[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of petitioner's personal knowledge or reasonable investigation.'" *Hancock v. Davis*, 906 F.3d 387, 389-90 (5th Cir. 2018) (quoting *Moore v. Quarterman*, 534F.3d 454, 465 (5th Cir. 2008)).

The affidavits at issue here do not constitute new evidence.  If Petitioner was with the affiants on October 31, 2013, he certainly knew that before his trial and before the time for filing a habeas petition expired.  Indeed, these affidavits were executed *prior* to Petitioner's trial, which took place in May of 2014.  The affidavits from Tamicia Irvin and Sherika Patton were executed on November 13, 2013, and those from Darnell McCully and Shawntraius Patterson were executed on November 21, 2013. ([1-1] at 9-12).  Additionally, the record reveals that witnesses were present during the trial, but Petitioner chose to not call any witnesses and to withdraw his alibi instruction. ([10-2] at 7, 28, 58-59).

Fifth Circuit precedent "thus prohibits [Petitioner] from supporting his actual-innocence gateway claim with the proffered affidavits as 'new' evidence, so he is unable to overcome § 2244(d)(1)'s limitations bar." *Hancock*, 906 F.3d at 390; *see also Tyler v. Davis*, 768 Fed. Appx. 264, 365 (5th Cir. 2019) (holding that information contained in affidavits which was known to a petitioner before trial did not qualify as new evidence); *Shank v. Vannoy*, 2017 WL 602984, at *2

(5th Cir. Oct. 26, 2017) ("Evidence that was available to be presented to the jury at the time of trial is not now 'new' evidence, even if it was not actually presented to the jury.").

Moreover, had the testimony of McCully, Patterson, Irvin, and Patton been offered at trial, it could have been weighed by the jury, along with the evidence offered by the State, and their statements do not satisfy the burden of showing that no reasonable juror would have found Petitioner guilty. Their testimony, at best, would have established conflicting testimony among witnesses. The jury would have been required to weigh credibility, just as it did with the trial witnesses.

For instance, Calvin Jackson, the chief of police for Port Gibson, testified at trial that the robbery victim, David Ellis, identified Petitioner from a photograph lineup as the person who robbed him. ([10-2] at 12). Additionally, Ellis testified that, when he reviewed the photograph lineup, he immediately recognized Petitioner as the robber and had no doubt Petitioner robbed him. ([10-2] at 38). Ellis also positively identified Petitioner in the courtroom as the robber. ([10-2] at 39).

The existence of a "swearing match" would not establish that no reasonable juror could have found Petitioner guilty beyond a reasonable doubt. *Bosley*, 409 F.3d at 665. Accordingly, the affidavits do not reach the level of certainty required in habeas cases to question the finality of state court judgments.

Petitioner also complains about the inconsistencies between Ellis's description of the robber to the police and Petitioner's actual appearance. This information, however, is not new as the Mississippi Supreme Court explained:

> Ellis positively identified Little as the robber from a photo lineup and again from the witness stand. The conflicting portions of Ellis's descriptions were thoroughly presented to the jury. And obviously the jury resolved these conflicts and concluded

10

>beyond a reasonable doubt that Little was the man who attacked Ellis, pointed a gun in his face, and robbed him.

*Little*, 233 So. 3d at 292; ([10-2] at 42-48). Thus, this information concerning inconsistent statements cannot support Petitioner's actual-innocence claim and does not allow him to overcome the limitations bar. *See Hancock*, 906 F.3d at 390.

Likewise, Petitioner's assertion that "the guy who committed this crime was caught with the gun [and] fits the description" is not new evidence and does not allow Petitioner to overcome the limitations bar. ([1] at 14). This information was presented to the jury. During cross-examination, Chief Jackson explained that he recovered a gun similar to the one used during the robbery of Ellis from Ryan Young, who was arrested and charged with burglary of a dwelling. ([10-2] at 22-25). However, Chief Jackson also explained that Ryan Young was included in the photograph lineup from which Ellis identified Petitioner as the robber. ([10-2] at 56).

In support of his actual-innocence claim, Petitioner also relies on the fact that he was "no billed" by the grand jury before he was eventually indicted. This, however, is not new evidence, and it does not establish that Petitioner is actually innocent of the robbery. *See Bell v. Stephens*, 2014 WL 1467003, at *4 (N.D. Tex. Apr. 15, 2014) ("To the extent that Petitioner complains that the prosecutor re-submitted the case to the grand jury for a second time and obtained an indictment . . ., this is not evidence that he is actually innocent . . . .").

Additionally, Petitioner argues that the jury had been deadlocked prior to reaching a verdict and submits an affidavit from one of the jurors, which states:

>I, Oscar Small, Jr. . . . hereby certify that on May 13, 2014, I was a juror on the case . . . . That on that day, I reported to the baliff [sic] that the jury was deadlocked. At that time we, the jury, were informed by the baliff [sic] that we had to make a decision, Guilty or Not Guilty, before we could go home. After that, the atmosphere in the jury room changed and eventually we all agreed that the verdict should be guilty. I had doubts that the defendant was guilty at the time the verdict was given.

([1-1] at 7).

Petitioner presented this affidavit to the trial court in support of his motion for judgment notwithstanding the verdict, and the trial court denied the motion, finding that "the jury verdict is not in error." ([10-1] at 32-36, 46). That the jury did not immediately return a unanimous guilty verdict does not establish Petitioner's actual innocence. Nor does the fact that one juror had doubts about Petitioner's guilt. This evidence does not show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329; *see also Hamilton v. Gansheimer*, 536 F. Supp. 2d 825, 833-34 (N.D. Ohio 2008) (holding that a juror's affidavit stating that she believed the defendant was innocent but felt pressured to convict the defendant provided no evidence of actual innocence); *Crockett v. Clarke*, 2019 WL 1367741, at *54 (E.D. Va. Mar. 26, 2019) (holding that juror affidavits do not constitute evidence of actual, factual innocence); *Johnson v. Giles*, 2011 WL 4971967, at * 3 (M.D. Ala. Sept. 14, 2011) ("Indeed, this court questions whether an affidavit by which a juror seeks to impeach her own or the jury's verdict—a generally disfavored tactic—could ever meet *Schlup's* requirement that *factual*—as opposed to legal—innocence be demonstrated when one asserts his 'actual innocence.'").

Finally, Petitioner supports his actual-innocence claim with that fact that the Mississippi Court of Appeals reversed his conviction and remanded the action for a new trial. *See Little*, 233 So. 3d at 314. This fact is not new evidence and does not establish that Petitioner is actually innocent of the robbery. Accordingly, Petitioner's arguments fall short of demonstrating actual innocence, and he cannot avoid the statutory bar of § 2244(d).

*Evidentiary Hearing*

Petitioner requests an evidentiary hearing, but he does not explain which of his claims should be addressed during such a hearing. Where the state courts disposed of Petitioner's claims on the merits, the standard of review to be applied by this Court is set forth in 28 U.S.C. § 2254(d)(1), which provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d). The United States Supreme Court has made clear that the "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id*. at 185. "The import of *Pinholster* is clear: because [the petitioner's] claims have already been adjudicated on the merits, § 2254 limits our review to the record that was before the state court." *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012).

Even if any of Petitioner's claims fall outside the scope of § 2254(d), which applies only to adjudication on the merits in state court, Petitioner has failed to meet the standard for an evidentiary hearing set forth in § 2254(e)(2). Section 2254(e)(2) limits the discretion of federal habeas courts to take new evidence in an evidentiary hearing; it provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner has failed to meet any of the requirements for an evidentiary hearing. Therefore, the undersigned recommends that Petitioner's request for an evidentiary hearing be denied.

## CONCLUSION

Petitioner's state court conviction became final on April 25, 2018. Based on the one-year limitations period found in 28 U.S.C. § 2244(d)(1)(A) and the statutory tolling period found in 28 U.S.C. § 2244(d)(2), Petitioner was required to file his federal petition by May 14, 2020. Petitioner filed his petition on October 4, 2023. Petitioner has failed establish that additional statutory or equitable tolling is appropriate nor has he presented new reliable evidence such that no reasonable juror would conclude that he is guilty. Accordingly, he cannot avoid the statutory bar of § 2244(d).

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that Respondent's Motion to Dismiss [9] be GRANTED and that the Petition for Writ of Habeas Corpus [1] be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing

party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 20th day of May, 2024.

s/ Michael T. Parker
United States Magistrate Judge
